YORK (GRAY v.). See Case No. 5,731.

YORK (SCHELTER v.). See Case No. 12,-446.

YORK (STEINKUHL v.). See Case No. 13,-356.

---

## Case No. 18,141.

### YORK et al. v. WISTAR.

[16 Haz. Reg. (Pa.) 153.]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1834.

MUTUAL ACCOUNTS — SETTLEMENT — PROMISE TO PAY BALANCE—PRESUMPTION—CONFLICT OF LAWS.

[1. Where the contract was that the purchasers should pay the sellers in England, and the uniform mode of payment was to remit bills of exchange on England, the contract was to be governed by the laws of that country.]

[2. In order that a usage of trade shall control the method of stating accounts between two persons, it must have been continued for such a length of time as to have become generally known to those engaged in the trade, and must be so general as to have become the settled rule of commercial intercourse, in the absence of any special agreement or particular course of dealing between individuals.]

[3. The existence of a usage may be proved by one witness.]

[4. An account may be a stated or settled account, though not signed by the parties.]

[5. From the fact of stating an account, the law raises a promise to pay the balance found due.]

[6. The balance found on a statement of account may properly bear interest, though items of interest were included in the account.]

[7. The presumption of a promise to pay the sum claimed arises when the account is rendered and received without objections made in a reasonable time, especially if the same course of dealing is continued by the parties.]

BALDWIN, Circuit Justice. The first question which arises in this cause, is whether it is to be decided by the law of England, or the law of Pennsylvania? The supreme court of the United States have decided that "the general principle adopted by civilized nations is that the nature, validity, and interpretation of contracts, are to be governed by the law of the country, where the contracts are made, or are to be performed." [Bank of U. S. v. Donnally] 8 Pet. [33 U. S.] 372. If a contract is made in one country or state, and is to be performed in another, the law where it is to be performed governs it. [Lanusse v. Barker] 3 Wheat. [16 U. S.] 146. In this case the conduct of the parties has shown beyond a doubt that the agreement of the defendant has been to perform his contract of purchase, by paying the plaintiffs in England. His uniform mode of payment has been by remitting bills of exchange on England, and paying the premium at which they were purchased, and no objection has been made by his counsel to paying the premium at the present rate of exchange on the balance now due. You will therefore consider the contract between these parties as one which is to be executed in England, and to be governed by the law of that country. Five per cent. interest only can be charged, and the allowance or regulation of interest must depend on the rules established there, not on those which prevail here. We are far from saying that there is any difference between the law of the two countries on the subject of interest, whether simple or compound, on merchants accounts. But it is unnecessary to make the examination, because, if we were now satisfied that there was a difference, we could not exclude the operation of the law of England on this case, after the parties had for fifteen years adopted it in the com-

putation of interest and the course of remittance.

The next question is, what is the law of England in relation to such a course of dealing as has prevailed between the plaintiffs and defendants from the year 1814 to the close of their accounts. The course of dealing between them was by direct correspondence. Neither party employed an agent. The defendant sent out orders for goods, which were shipped to him by the plaintiffs, without any special agreement as to price, the terms, or time of payment. The plaintiffs also acted as the agents of the defendant in purchasing and paying for articles ordered, but which, not being in the line of their business, the plaintiffs procured for the defendant, who remitted money through them to those who furnished the goods.

The first item in the account is in ———, 1814, to the debit of defendant, the last purchase made by him is charged 1 August, 1822. In the intermediate time, the charges amounted to £ stg. ——— and the credits to £ stg. ———. Invoices of the different shipments, with the pattern cards, were sent, from time to time, according to orders, and the capacity of the plaintiffs to fill them.

The following accounts current were sent and received: No 2. Sent in a letter dated 15 November, 1815, exhibiting the balance due up to 31 December, 1815, post mark New York, 4 March. No. 3. Sent in a letter of 5 November, 1817, exhibiting the balance due on the 31 December, 1817, post marked New York, 15 January, 1818. No. 4. Sent in a letter of 12 October, 1818, exhibiting the balance on the 31 December, 1818, no post mark. No. 5. Sent in a letter 10 June, 1821, exhibiting the balance on the 31 December, 1820, no post mark. No. 6. Sent in a letter of 12 May, 1824, exhibiting the balance on the 31 December, 1823, no post mark. No. 7 was handed by T. Stewartson to defendant in 1829, and is a general statement of the accounts from 1815 till their close, being accounts No. 3, 4, 5, 6, contained in one paper. No. 8 was enclosed in a letter of 24 August, 1829, and exhibits the balance for which this suit is brought.

These accounts are made up of charges for the different invoices, and interest up to the time of closing the account, on one side, and credits for payments and interest on the other; a balance of interest is then added at the foot of the account, and a general balance struck, which is carried into the new account for the next year, and the account is carried on as before, with the interest on the balance. This being the admitted course of dealing between the parties, the question before us is whether the law of England sanctions such a mode of stating the account.

It is admitted that if such is the general usage of the trade between this country and England, such accounts are legal, and must be enforced in our courts. By the usage of trade you will understand is meant the usage of trade and dealing between the merchants of two countries, as evidenced by their actual transactions where no special contract has been made, but both parties have dealt together, on the tacit agreement that their dealings shall be regulated by the general rules which by common consent govern the particular trade. When there is such an established usage, it becomes the law of the trade, and applies to the dealings of the parties, controlling them in the same manner as the statute or common law in ordinary cases. It must, however, have been continued for such length of time as to have become generally known to those engaged in the trade and so general as to have become the settled rule of commercial intercourse, in the absence of any special agreement or particular course of dealing between individuals which form exceptions to the general rule prescribed by usage. The usage and custom of any particular trade is the law by which it is to be regulated. Whether there is such usage, and what it is, are questions of fact which are to be decided on the same principle as any other fact. One witness is legally competent to prove it, though the jury will judge of his credibility; but if his character is fair, his testimony clear, and he appears to have a proper knowledge on the subject, it would be an innovation on the rule of evidence to require a usage to be proved by more than one witness. Of the existence of any usage as to the course of dealing between the parties to this suit, which can affect its merits, you are the exclusive judges; you will decide upon it on a consideration of all the evidence. If any of you have any personal knowledge on the subject, which may have any influence on your verdict, you will state it in open court, so that each party may put to you any proper questions. Should you be satisfied that the plaintiffs have established the existence of an usage or course of trade, conformably to the accounts made out and rendered by them, then your verdict ought to be in their favor. If you are not so satisfied, then we must inquire whether the account has not been settled and agreed to by the parties, as a legal inference from the facts and circumstances in evidence, which make it what is called in law a stated account; that is, a statement of charges and credits agreed to by debtor and creditor,— a balance struck (if there is any due), and carried to a new account, or paid, as a debt admitted to be due by mutual consent, on a settlement of the accounts between the parties, and payable on demand if no time is fixed for payment. An account may be a stated or settled one, though not signed by the parties. The fact of their accounting together and striking a balance by consent, may be proved, as any other fact, by the direct evidence of their signatures, or cir-

cumstances which justify the legal inference that the parties have so accounted. If the facts and circumstances on which this inference depends are uncontested, the law makes the inference; if they are doubtful, the jury will decide ·how far the party claiming the balance has established a ground for the legal inference. If in their opinion such facts exist as lay the foundation of the legal presumption that the parties have agreed on the balance, it is their duty to find their verdict accordingly. Whenever an account is directly proved or inferred by the law to be settled, the party claiming the balance is not bound to prove any of the items of the account; they are presumed to be correct until the other party produces clear proof of fraud, error, or mistake. The balance stated is a liquidated debt, as binding as if evidenced by a note, bill, or bond. Though there is no express promise to pay, yet from the fact of stating or settling the account, the law raises a promise as obligatory as if expressed in writing, to which the same legal incidents attach as if a note or bill was given for payment. These incidents are an immediate right of action on demand of the balance, with interest from the time of settlement.

It is no objection to a stated account that it contains charges of interest, unless such as are usurious, or otherwise unlawful. If interest is due by the usage of trade, or if the debtor .has agreed to pay it, the whole account is to be taken as principal, and a jury are no more authorized to strike out the charges of interest than principal. Both form a settled balance, which the debtor promises to pay on demand, which he has his option to do, or suffer it to enter into a new account. If not able or willing to pay, he ought not to place the creditor in a worse situation than if he had complied with his promise. No one would contend that if the debtor had given his note for the balance of ·the account, with interest from the settlement, the full account could not be recovered. It would be strange if the creditor should lose his interest, because he left the balance in the debtor's hands by mutual consent, on the faith of the implied promise and legal obligation to pay, without exacting a note.

This is not like a case of compound interest on an original contract. The parties settle their accounts, a certain sum is due for principal, and a certain sum for interest, composing one debt. thus due and payable. The right of the creditor to receive the one item is as perfect as to the other. If the debtor pays the balance, he cannot recover back any of the items of interest which made up the balance. If, instead of paying. he asks or takes time to pay the balance, he ought to be in no better situation than if he had paid his money. ·He chooses to use his creditor's money. and every rule of law and principle of justice requires that

he should pay the interest. The time to object to the payment of interest is while the account is open, or a current one. It cannot be a stated account, without the express or implied consent of the debtor; but, when he waives his objection to interest till he has signed the settled account, or till the law presumes his agreement to pay the sum claimed, he is precluded by his own acts. This presumption attaches when an account is rendered, received without objections made in a reasonable time, especially when the same course of dealing is continued by both parties after the receipt of accounts, from time to time, on the same principle.

. The rendering accounts made up of charges of interest, as those in the present case are, is a declaration by the creditor of the terms on which he gives the credit and continues to furnish his goods to the debtor. The receipt of the accounts without objection, and the continuance to purchase and remit. is an acquiescence and assent to such terms. A contract is thus made by both parties, evidenced by their mutual acts and dealings for years, as binding on both as if made in writing on opening the account. It is an admission of the balance claimed, on which the law raises a promise to pay it, with interest. This promise is not one which a jury will negative, if the law declares the account to be a stated one, any more than they would negative a promise to pay for goods, the sale and delivery of which was admitted. They will enquire into the fact of the accounts having been rendered by one party, received by the other, and whether any objections were made, and when made, in the same manner as they would into the fact of the sale and delivery of goods; but if they have no doubt about the facts, their duty is to find a verdict according to their legal result. When a man buys goods, it is not a question of fact whether the purchaser promises to pay for them, nor, when he settles an account, whether the debtor promises to pay the balance; the law settles these questions. A jury cannot open a settled account, unless on proof of fraud or mistake, or annul the fair agreement of parties which violates no law; and the law declares all accounts to be settled ones which have been received and retained without objection, within a reasonable time.

Of the facts of this case you can have no doubt. The accounts rendered by the plaintiff from time to time, the correspondence between the parties, and the whole conduct of the defendant, show a perfect understanding on his part of the claim of the plaintiff, and his tacit assent to its justice; and when it appears that no objection was made to the payment of interest till 1828, six years after he had ceased to make any further purchases, it cannot be pretended that this was within a reasonable time. On the whole case, we think that the account be-

tween the parties might be considered a stated one, the consequence of which is that the plaintiff is entitled to your verdict for the balance appearing due, with five per cent. interest to this time, with the addition of exchange at its present rate.